The Honorable _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MEDICAL COMMUNICATIONS RESOURCES, INC., a Maryland corporation; and US HEALTH NETWORK, INC., a Maryland corporation,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>GLOBAL INITIATIVE FOR ASTHMA, INC., a Maryland corporation; and GLOBAL INITIATIVE FOR CHRONIC OBSTRUCTIVE LUNG DISEASE, INC., a Maryland corporation,<br><br>                                    Defendants. | NO.<br><br>**COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING, INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT** |

## INTRODUCTORY STATEMENT

This is an action brought to preserve and protect funds and assets that have been donated for the public good, but which are not being used for that purpose. Although plaintiffs have been greatly damaged by defendants' actions, plaintiffs primarily want to insure that funds are used as mandated by the donors and that defendants cease wrongfully using plaintiff Medical Communications Resources, Inc.'s ("MCR") intellectual property.

## PARTIES

Plaintiffs MCR and US Health Network, Inc. ("US Health") allege as follows:

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 1

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1.      MCR is a Maryland corporation with its headquarters in the State of Washington.  MCR does business primarily in Washington and internationally.

2.      US Health is a Maryland corporation with its headquarters in the State of New York.  US Health does business primarily in New York, Washington, and internationally.

3.      Global Initiative for Asthma, Inc. ("GIA") is a Maryland corporation which has status as a nonprofit corporation under Section 501(c)(3) of the Internal Revenue Code.

4.      Global Initiative for Chronic Obstructive Lung Disease, Inc. ("GICOLD") is a Maryland corporation which has status as a nonprofit corporation under Section 501(c)(3) of the Internal Revenue Code.

### JURISDICTION AND VENUE

Jurisdiction in this matter is based upon 28 U.S.C. § 1338 since this matter involves a trademark action, copyright action, and unfair competition and 28 U.S.C. § 1331 because it addresses a federal question.  Venue is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the State of Washington, the bank accounts for GIA and GICOLD are in Washington, and the defendants reside in Washington because their headquarters and operations are based in Vancouver, Washington.

### FACTS COMMON TO ALL CAUSES OF ACTION

1.      MCR and US Health are owned and operated by Lawrence Grouse, MD, Ph.D. Dr. Grouse, MCR and US Health have had longstanding involvement and interest in improving the global health approach to asthma and chronic obstructive pulmonary disease ("COPD").

### BACKGROUND REGARDING GIA

2.      In 1992, MCR and Dr. Grouse started a worldwide movement to prevent, manage, and treat asthma patients and improve their quality of care.  This was called the

---

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Global Initiative for Asthma.  Through the efforts of MCR and Dr. Grouse, it became known by the acronym "GINA."  The purpose of the GINA initiative was to work with healthcare professionals and public health officials to raise awareness of asthma and the improvement, prevention, and treatment of asthma for patients around the world.  In order to accomplish this goal, MCR spearheaded the development of an evidence-based medical guideline for asthma management, which was eventually to become known as the "The Global Initiative for Asthma, Global Strategy for Asthma Management and Prevention" or "GINA Workshop Report."   In addition to the creation and development of medical guidelines, MCR coordinated and conducted global workshops, meetings, and informational events and global promotion of World Asthma Day.

3.      From 1992 until 2008, MCR and Dr. Grouse devoted resources to raising funds for the GINA initiative, including the development of the GINA Workshop Report and its worldwide dissemination, coordinating worldwide meetings for the GINA initiative, organizing meetings nationally and internationally to further the GINA initiative on a global level, and hosting awareness and promotional events.  For the years 1992-2008, the GINA initiative was conducted through the efforts and auspices of MCR.

4.      Through a substantial expenditure of MCR's time, resources, and energy, the GINA initiative became the benchmark and standard for the coordination of global efforts to improve treatment for asthma and the GINA Workshop Report became the leading publication on asthma.  It defines asthma management worldwide.

5.      Dr. Lawrence Grouse donated his time to the GINA initiative beginning in 1992 as the Executive Director of GINA.  Dr. Grouse oversaw, directed and coordinated the creation and development of the GINA Workshop Report and related written materials, attended meetings, Dr. Grouse set agendas, and Dr. Grouse worked tirelessly to promote and fund the GINA initiative on a worldwide basis.

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 3

620269.01

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

6.     In recognition of its rights, MCR obtained copyright registrations in the GINA Workshop Report and its updates.  Copies of applicable trademark registrations for these are attached as <u>Exhibit A</u> and incorporated by this reference.  Copies of applicable copyright registrations are attached as <u>Exhibit B</u> and incorporated by this reference.

7.     In addition, MCR owns the copyrights to other materials produced in connection with the GINA initiative, including:

> The GINA Pocket Guide for Management and Prevention of Asthma for Physicians and Nurses;

> The GINA Report:  Global Strategy for the Diagnosis and Management of Asthma in Children Five Years and Younger;

> Pocket Guide for Asthma Management and Prevention in Children Five Years and Younger; and

> At a Glance Asthma Management Reference.

8.     Over the years, MCR expended significant time, effort, and financial resources in promoting the activities and materials of the GINA initiative under various trademarks it created.   MCR continuously and exclusively used the trademarks and service marks "WORLD ASTHMA DAY" and design, "WORLD COPD DAY" and design; "GLOBAL INITIATIVE FOR ASTHMA" and design; and "ALLERGIC RHINITIS AND ITS IMPACT ON ASTHMA" and design in connection with those activities.  The trademarks have come to symbolize the extraordinary goodwill of MCR.  (The copyrights and trademarks of MCR are collectively referred to hereinafter as the "GINA intellectual property.")

9.     MCR raised money for GINA by obtaining sponsors who provided educational grants for the programs and for the initiative.  Each year, MCR would prepare a budget for the upcoming year, specifying the amount of contributions to be raised and allocating the funds to specific activities.  The Executive Committee members of the GINA initiative would review

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 4

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

and approve the budget.  Once the budget was approved, MCR would submit a sponsorship proposal, which contained the approved budget, to potential sponsors.  The sponsors would donate funds with the expectation that the funds would be used for the purpose or purposes described in the budget and/or Sponsorship Agreement.

10.    Sponsorship money was raised and funds were used in accordance with the purposes described to the sponsors.

11.    No sponsor money was used in creating either the design or the trademark materials.  Rather, MCR created these materials on its own for the purpose of promoting the treatment of asthma.

12.    In 2008, the Executive Committee of the GINA initiative, Dr. Grouse and MCR thought the initiative could be strengthened by creating a designated charity for the purpose of receiving funds from sponsors and managing the initiative.  To that end, MCR assisted and even provided its own funds for the creation of GIA, a nonprofit company that was to apply for and receive status under the Internal Revenue Code of the United States of America as a 501(c)(3) company.  All parties thought that having GIA be a tax exempt company would assist in raising money and obtaining donations to further the good work started in 1992 by MCR and Dr. Grouse.

13.    After GIA was created and incorporated, an agreement was entered into between MCR and the newly formed GIA.  US Health was also formed at that time to implement and enhance the work of the GINA initiative.  The agreement provides that GIA would be given certain rights to control and develop the content of the guidelines and to use and publish the materials which were copyrighted by MCR, however, MCR would retain the commercial rights to all materials, including the GINA materials, the copyrights, and trademarks.  The agreement also detailed the fundraising that would be done by MCR and US Health on behalf of GIA and how the profits would be split between them.  The goal of the

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

agreement was to document the collaborative effort by which MCR would continue to assist in the global initiative, but that the 501(c)(3) company, GIA, would work closely with MCR for the benefit of the initiative.  A copy of the GIA agreement is attached as <u>Exhibit C</u> and incorporated by this reference.

**BACKGROUND REGARDING GICOLD**

14.     In 1996, MCR started a worldwide movement to prevent, manage and treat COPD patients and improve the quality of their care.  This was called the Global Initiative for Chronic Obstructive Lung Disease.  Through the efforts of MCR and Dr. Grouse, it became known by the acronym "GOLD."  The purpose of the GOLD initiative was to work with healthcare professionals and public health officials to raise awareness of COPD and the improvement, prevention and treatment of COPD for patients around the world.  In order to accomplish this goal, MCR spearheaded the development of an evidence-based medical guideline on COPD, which was eventually to become known as the "Global Initiative for Chronic Obstructive Lung Disease, Global Strategy for the Diagnosis, Management and Prevention of Chronic Obstructive Pulmonary Disease" or "GOLD Workshop Report."  In addition to the creation and development of medical guidelines, MCR coordinated and conducted global workshops, meetings and information events.

15.     From 1996 until 2008, MCR devoted resources to raising funds for the GOLD initiative, including the development of the GOLD Workshop Report and its worldwide dissemination, coordinating worldwide meetings for the GOLD initiative, organizing meetings nationally and internationally to further the GOLD initiative on a global level, and hosting awareness events.  For the years 1996-2008, the GOLD initiative was conducted through the efforts and auspices of MCR.

16.     Through a substantial expenditure of MCR's time, resources, and energy, the GOLD initiative became the benchmark and standard for the coordination of global efforts to

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 6

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

improve treatment for COPD and the GOLD Workshop Report became the leading publication on COPD.

17.    Dr. Lawrence Grouse donated his time to the GOLD initiative beginning in 1996 as Executive Director of GOLD.  Dr. Grouse oversaw, directed and coordinated the creation and development of the GOLD Workshop Report and related written materials, attended meetings, Dr. Grouse set agendas, and Dr. Grouse worked tirelessly to promote the GOLD initiative on a worldwide basis.

18.    In recognition of its rights, MCR obtained copyright registration in the GOLD Workshop Report and its updates.  Copies of applicable trademark registrations for these are attached as Exhibit D and incorporated by this reference.  Copies of applicable copyright registrations are attached as Exhibit E and incorporated by this reference.

19.    In addition, MCR owns the copyrights to other materials produced in connection with the GOLD Initiative, including:

> GOLD Pocket Guide to COPD Diagnosis, Management, and Prevention;

> GOLD COPD Diagnosis and Management At-A-Glance Desk Reference;

> GOLD At-A-Glance Pocket Reference for COPD Diagnosis, Management, and Prevention;

> GOLD Executive Summary:  Global Strategy for Diagnosis, Management, and Prevention of COPD;

> GOLD Spirometry Guide; and

> GOLD Spirometry Quick Guide.

20.    MCR and Dr. Grouse raised money for GOLD by obtaining sponsors for the programs and for the initiative.  Each year, MCR would prepare a budget for the upcoming year, specifying the amount of contributions to be raised and allocating the funds to be raised to specific activities.  The Executive Committee members of the GOLD initiative would

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 7

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

review and approve the budget.   Once the budget was approved, MCR would submit a sponsorship proposal, which contained the approved budget, to potential sponsors.   The sponsors would donate the funds with the expectation that the funds would be used for the purpose or purposes described in the Sponsorship Agreement.

21.     Sponsorship money was raised and funds were used in accordance with the purposes reviewed with the sponsors.

22.     No sponsor money was used in creating either the copyrighted material in the names or the trademarks.  Rather, MCR created these materials on its own for the purpose of promoting the treatment of COPD.  In 2008, the Executive Committee, Dr. Grouse and MCR thought the initiative could be strengthened by creating a designated charity for the purpose of receiving the funds from the sponsors and managing the initiative.  To that end, MCR assisted and even provided funds for the creation of GICOLD, a nonprofit company that was to apply for and receive status under the Internal Revenue Code of the United States of America as a 501(c)(3) company.   All parties thought that having GICOLD be a tax exempt company would assist in raising money and obtaining donations to further the good work started in 1992 by MCR and Dr. Grouse.

23.     After GICOLD was created and incorporated, an agreement was entered into between MCR and GICOLD.  US Health was also formed at that time to implement and enhance the work of the GOLD initiative.  The agreement provides that GICOLD would be given certain rights to control the content of the guidelines and to use and publish the materials which were copyrighted by MCR, however MCR would retain the commercial rights to all materials, including the GOLD materials, the copyrights and trademarks.   The agreement also detailed the fundraising that would be done by MCR and US Health on behalf of GICOLD and how profits would be split between them.  The goal of the agreement was to document the collaborative effort by which MCR would continue to assist in the global

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 8

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

initiative, but that the 501(c)(3) company, GICOLD, would work closely with MCR for the benefit of the initiative.  A copy of the GICOLD agreement is attached as Exhibit F and incorporated by this reference.

24.     MCR and US Health continued fundraising activities on behalf of GIA and GICOLD after the contracts were signed in March 2008.  Virtually all of the money for GIA and GICOLD from March 2008 through the present was raised by Dr. Grouse acting on behalf of MCR and US Health.

25.     MCR and US Health persuaded sponsors of the benefits to mankind from effective dissemination of the guidelines to the world resulting in more effective treatment for asthma and COPD.  All parties understood the funds would be used for the laudatory nonprofit purposes of GINA and GOLD through the nonprofit companies of GIA and GICOLD.

26.     In addition to raising more and more funds, MCR was also using revenues from its trademark and copyrighted intellectual property to assist in the work of GINA and GOLD.  Effective use of the valuable marks and the ability to effectively sell the copyrighted material is dependent upon the reputations of GINA and GOLD and health care professionals around the world appreciating the need and desiring to have those materials.

27.     Dr. Grouse continued to donate substantial portions of his time to the good work of GINA and GOLD by attending meetings, working with stakeholders in the process, acting as a liaison to sponsors and obtaining grants from sponsors, and using his time and energy to further the initiatives.

### DAMAGING AND WRONGFUL CONDUCT

28.     The Executive Boards of GIA and of GICOLD hired an Executive Director by the name of Dr. Claude Lenfant for both GIA and GICOLD.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

29.     Dr. Lenfant proceeded to hire his wife, Dr. Suzanne Hurd, and gave her the title "Scientific Director" of GIA and of GICOLD.   GIA and GICOLD, through their executive employees, Dr. Lenfant and Dr. Hurd, have breached the contracts with MCR and have caused significant damage to the initiatives and MCR.

30.     Drs. Lenfant and Hurd have made false and misleading statements, verbally and by email, about the services, products, trademarks and copyrighted works of MCR. Drs. Lenfant and Hurd have also urged leaders in various countries and international collaborators to not work with MCR.

31.     Drs. Lenfant and Hurd have urged sponsors to ignore MCR and its products and services, claiming that MCR should not be involved and is unnecessary to the process and the good of the initiatives.   For example, in some situations Drs. Lenfant and Hurd have demanded the sponsors provide them with business cards so they can cut MCR out of any communications and interact directly with the sponsors.

32.     Drs. Lenfant and Hurd have discouraged groups from collaborating in commercial uses of GINA and GOLD material and have publicly stated they believe the products and materials should not be copyrighted or disseminated for a price.   They have also provided copyrighted materials to others and encouraged them to use the copyrighted materials.

33.     Drs. Lenfant and Hurd have excluded Dr. Grouse and others who have been working on the development process from GIA/GICOLD meetings and have interfered with the development activities.

34.     Drs. Lenfant and Hurd have even stated that they will exclude representatives of MCR and US Health from public meetings of GINA and GOLD international leaders.

35.     Dr. Lenfant has failed to utilize sponsorship funds for the purposes designated in the budgets approved by GIA and GICOLD which were provided to the sponsors in the

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

grant proposals and under the sponsor agreements.  On information and belief, it is believed that approximately $700,000 of sponsor funds remained in the GIA and GICOLD bank accounts after the Winter 2010 meetings and more than $500,000 following the end of the current phases of GINA and GOLD at which time all funding of GIA and GICOLD activities should be completed.

36.     Each of the sponsors receives a grant proposal, which contains the budget with the itemized uses for the funds.  In addition, typically, the sponsors have agreements which dictate the manner in which the funds should be used but, furthermore, expressly require accountability and reporting of the use of the funds.  This is important, both for checks and balances to make sure the funds are properly used, but also for the sponsors so they have documentation of donations to a 501(c)(3) corporation.  In most cases, the sponsor agreement is between MCR and the sponsor.  The sponsor makes the pledge to MCR and then MCR makes sure the money is paid to either GIA or GICOLD, whichever was intended to receive the sponsor's educational grant.

37.     MCR acts as the fund raising source and conduit, and the money is then turned over in trust to either GIA or GICOLD to be used expressly for the benefit of the initiatives.

38.     One of the goals of the creation of GIA and GICOLD was to achieve the tax status of a 501(c)(3) corporation in order to enhance donations and sponsorships.  The closely related goal was financial transparency of the 501(c)(3) corporations so sponsors could be confident their funds were being used for the appropriate purposes.

39.     Drs. Lenfant and Hurd have not only failed to provide financial transparency, but have failed to fulfill the basic terms of the agreement with MCR and the agreements that MCR obtained on behalf of GIA and GICOLD with various sponsors.  The refusal of Drs. Lenfant and Hurd to comply with basic obligations has damaged MCR and US Health's reputations, goodwill, and finances.

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 11

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

620269.01

40.     Drs. Lenfant and Hurd have also taken exorbitant salaries and have covered up this information.  The financial report prepared and submitted by Dr. Lenfant does not indicate the salary he and his wife took, but the IRS database for IRS Form 990 indicates that together their salaries total $210,000 for 2008/2009 and 2009/2010 for GIA and GICOLD, which is almost one-third of the companies' total revenue.

41.     Various sponsors have expressed written dissatisfaction with this conduct.  MCR, GIA and GICOLD have received letters demanding to know how the sponsorship funds have been used and insisting upon appropriate budgetary explanations, as required by the sponsorship contracts.

42.     Dr. Lenfant has also failed to keep the corporate charters in good standing.  Both GIA and GICOLD are listed as "not in good standing" in Maryland and required state fees have not been paid for 3 years.  Moreover, there are serious concerns as to the 501(c)(3) status of each corporation based upon the activities of Drs. Lenfant and Hurd.

43.     As a result of the violations of the agreements by GIA and GICOLD, MCR terminated the agreements on July 29, 2010.  Copies of the termination letters to GIA and GICOLD are attached as <u>Exhibit G</u> and incorporated by this reference.

## FIRST CAUSE OF ACTION

## TRADEMARK INFRINGEMENT AND VIOLATION OF THE LANHAM ACT

44.     Plaintiffs reallege the above paragraphs and incorporate them by reference.

45.     GIA and GICOLD have engaged in making false and misleading statements in commerce concerning MCR's intellectual property which misrepresents the character and nature of MCR's goods and services.

46.     This has caused extensive damages to MCR in an amount to be proven at trial.  The damages include the damage to the value of the marks, the lost profits in the past and anticipated in the future from the devaluation of the marks, and actual out-of-pocket costs

RS  Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

associated with MCR trying to mitigate damages by combating the activities of GIA and GICOLD.

### SECOND CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

47.     Plaintiffs reallege the above paragraphs and incorporate them by reference.

48.     GIA and GICOLD have each breached their fiduciary duty with plaintiffs, with the sponsors, and with the public at large.

49.     By failing to use funds for the benefit of the public and in accordance with the grants from the sponsors, GIA and GICOLD have damaged the public, and MCR and US Health. The damages also include the negative impact upon plaintiffs from the failure of GIA and GICOLD to perform, including but not limited to their damaging conduct, the failure to abide by the contracts with the sponsors and resulting negative impact upon MCR, the failure to appropriately use funds in the manner which resulted in MCR being placed in a bad light, which impacted its goodwill and profits.

50.     GIA and GICOLD should be required to account for the use of their funds for the past one year's (July 1, 2009 to June 30, 2010) activities and document all GIA and GICOLD funds remaining.  MCR has terminated the GIA and GICOLD agreements, and all funds that remain should be returned to MCR so that they can be used in accordance with the stated purposes.  Although plaintiffs have both been damaged, plaintiffs do not seek any monetary recovery for this at this time; only that the funds are used for the public welfare and in accord with the pledges made to the donors as they were originally intended.

### THIRD CAUSE OF ACTION

### CONSTRUCTIVE TRUST

51.     Plaintiffs reallege the above paragraphs and incorporate them by reference.

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 13

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

52.     MCR and US Health raised money through hard work with sponsors, which was pledged by sponsors for the benefit of the GINA and GOLD initiatives.

53.     Instead of using it for the GINA and GOLD initiatives, money was improperly spent on exorbitant salaries of the executive director of GIA and GICOLD and his wife and for other improper purposes.

54.     Some of the money was not spent as promised, but instead kept in an account, contrary to the purposes that it was pledged for.  The Court should impose a constructive trust upon those funds to make sure the funds are, in fact, used for the purposes pledged, that is for the benefit of the GINA and GOLD initiatives.

## FOURTH CAUSE OF ACTION

## ACCOUNTING

55.     Plaintiffs reallege the above paragraphs and incorporate them by reference.

56.     The contracts between MCR and GIA and between MCR and GICOLD require certain budgets to be prepared and certain actions to be taken by each party.

57.     MCR has evidence that funds raised for the benefit of GIA and funds raised for the benefit of GICOLD have not been spent in accordance with their stated purpose.  MCR is entitled to an accounting to validate that the funds were used appropriately and that MCR obtained the appropriate benefits of its contractual relations.

58.     MCR also has evidence that unusually large amounts have been used for deposits for supposed future meetings, but the deposits are cancellable.  Thus, the deposits create the illusion of funds being spent for legitimate purposes but the deposit can be cancelled and returned virtually at any time.  Defendants should be required to account for all such deposits.

59.     Defendants should also be required to account for and establish that no funds will be used in any way that is associated with MCR's copyrighted material or trademarks.

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 14

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

## FIFTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

60.    Plaintiffs reallege the above paragraphs and incorporate them by reference.

61.    Plaintiffs are entitled to injunctive relief prohibiting GIA and GICOLD from spending any remaining funds in a manner contrary to the sponsorship agreements, which MCR obtained.

62.    Plaintiffs are further entitled to injunctive relief precluding GIA and GICOLD from using any of MCR's intellectual property, including but not limited to copyrights and trademarks and further that GIA and GICOLD be required to notify all persons or entities that have been or intend to use the trademarked or copyrighted materials that permission to do so must be obtained from the holder of the legal copyrights/trademarks:  MCR.

63.    Plaintiffs are also entitled to injunctive relief prohibiting GIA and GICOLD and their agents, employees, officers and directors from using and/or taking any further action to damage and/or devalue MCR's intellectual property.

## SIXTH CAUSE OF ACTION

### COPYRIGHT INFRINGEMENT

64.    Plaintiffs reallege the above paragraphs and incorporate them by reference.

65.    Pursuant to 17 U.S.C. § 501, a copyright owner is entitled to institute an infringement action against anyone who violates the exclusive rights of the copyright owner.

66.    MCR is the developer and owner of the copyrights referenced above.

67.    GIA and GICOLD have knowingly encouraged others to use the copyrighted materials although GIA and GICOLD have no legal basis for doing so and in fact it expressly breaches the contract with MCR and the federally protected copyright rights of MCR.

68.    GIA and GICOLD's unauthorized reproduction and distribution of copyrighted material is an unlawful infringement on MCR's copyrighted materials and rights.

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 15

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

69.     As a proximate result of GIA and GICOLD's unauthorized reproduction and distribution of copyrighted materials, MCR has been damaged in an amount to be proven at trial.

70.     Pursuant to 17 U.S.C. §§ 502-03, the Court may issue an injunction to prevent or restrain further infringement of a copyright, order the impoundment of all copies made in violation of a copyright owner's exclusive rights as well as the articles by which the copies are made while the action is pending, and, as part of the final judgment, order the destruction or reasonable disposition of all copies made in violation of a copyright owner's exclusive rights.  As part of the final judgment, the Court may also order the destruction of all articles by which the copies are produced.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

1.      Injunctive relief as set forth above against GIA;

2.      Injunctive relief as set forth above against GICOLD;

3.      For relief to be proven at trial for constructive trust and breach of fiduciary duty claims against GIA;

4.      For relief to be proven at trial for constructive trust and breach of fiduciary trust claims against GICOLD;

5.      For damages in an amount to be proven at trial for the trademark infringement and copyright claims against GIA;

6.      For damages in an amount to be proven at trial for the trademark infringement and copyright claims against GICOLD;

7.      For an accounting for all funds received, used and spent in any way or retained as to GIA, Inc.;

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 16

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

8.      For an accounting for all funds received, used and spent in any way or retained as to GICOLD;

9.      For costs and attorneys' fees as allowed by law; and

10.     For such other and further relief as the Court deems just and equitable.

DATED this 3rd day of August, 2010.

RYAN, SWANSON & CLEVELAND, PLLC

By _____
        Roger J. Kindley, WSBA #11875
        Bryan C. Graff, WSBA #38553
        Attorneys for Plaintiffs
        1201 Third Avenue, Suite 3400
        Seattle, Washington  98101-3034
        Telephone: (206) 464-4224
        Facsimile: (206) 583-0359
        kindley@ryanlaw.com
        graff@ryanlaw.com

COMPLAINT FOR VIOLATION OF THE LANHAM ACT, BREACH OF
FIDUCIARY DUTY, CONSTRUCTIVE TRUST, ACCOUNTING,
INJUNCTIVE RELIEF AND COPYRIGHT INFRINGEMENT - 17

620269.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

# EXHIBIT  A

**Int. Cl.: 42**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

**Reg. No. 2,174,375**

**Registered July 21, 1998**

## SERVICE MARK
### PRINCIPAL REGISTER



MEDICAL COMMUNICATIONS RESOURCES, INC. (MARYLAND CORPORATION)
8316 86TH AVENUE NW
GIG HARBOR, WA 98332

FOR: PROMOTING PUBLIC AND PROFESSIONAL AWARENESS BY PROVIDING INFORMATION ON ASTHMA RELATED ISSUES; DISSEMINATION OF INFORMATIONAL MAILINGS ON ASTHMA AND RELATED ISSUES; PROMOTING PUBLIC AND PROFESSIONAL AWARENESS OF THE NEED TO UNDERSTAND THE ILL EFFECTS OF ASTHMA THROUGH THE DISSEMINATION OF LITERATURE THROUGH THE MAILS AND OTHER MEANS; PREPARATION AND DISSEMINA-

TION OF SCIENTIFIC REPORTS ON ASTHMA MANAGEMENT AND PREVENTION; PROMOTING INTERNATIONAL COLLABORATION ON ASTHMA RESEARCH THROUGH THE DISSEMINATION OF BOOKLETS AND OTHER LITERATURE, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 2–23–1996; IN COMMERCE 2–23–1996.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ASTHMA", APART FROM THE MARK AS SHOWN.

SER. NO. 75–199,399, FILED 11–18–1996.

RAUL CORDOVA, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101 and 107

## United States Patent and Trademark Office

Reg. No. 2,187,156

Registered Sep. 8, 1998

## SERVICE MARK
## PRINCIPAL REGISTER

## GLOBAL INITIATIVE FOR ASTHMA

MEDICAL COMMUNICATIONS RESOURCES, INC. (MARYLAND CORPORATION)
8316 86TH AVENUE NW
GIG HARBOR, WA 98332

FOR: PROMOTING PUBLIC AND PROFESSIONAL AWARENESS BY PROVIDING INFORMATION ON ASTHMA RELATED ISSUES; DISSEMINATION OF INFORMATIONAL MAILINGS ON ASTHMA AND RELATED ISSUES; PROMOTING PUBLIC AND PROFESSIONAL AWARENESS OF THE NEED TO UNDERSTAND THE ILL EFFECTS OF ASTHMA THROUGH THE DISSEMINATION OF LITERATURE THROUGH THE MAILS AND OTHER MEANS; PREPARATION AND DISSEMINA-TION OF SCIENTIFIC REPORTS ON ASTHMA MANAGEMENT AND PREVENTION; PROMOTING INTERNATIONAL COLLABORATION ON ASTHMA RESEARCH THROUGH THE DISSEMINATION OF BOOKLETS AND OTHER LITERATURE, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 2-25-1995; IN COMMERCE 2-25-1995.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ASTHMA", APART FROM THE MARK AS SHOWN.

SER. NO. 75-199,398, FILED 11-18-1996.

RAUL CORDOVA, EXAMINING ATTORNEY

Int. Cls.: 41 and 42

Prior U.S. Cls.: 100, 101, and 107

**United States Patent and Trademark Office**

Reg. No. 2,564,339
Registered Apr. 23, 2002

## SERVICE MARK
### PRINCIPAL REGISTER



MEDICAL COMMUNICATIONS RESOURCES, INC. (MARYLAND CORPORATION)
8316 86TH AVENUE N.W.
GIG HARBOR, WA 98332

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING CONVENTIONS FOR THE PURPOSE OF RAISING AWARENESS OF ASTHMA AS A GLOBAL HEALTHCARE PROBLEM; ARRANGING AND CONDUCTING VIRTUAL EDUCATIONAL CONVENTIONS ON A GLOBAL COMPUTER NETWORK FOR HEALTH CARE PROFESSIONALS, PUBLIC AUTHORITIES, PROFESSIONAL AND PATIENT ORGANIZATIONS, AND THE PUBLIC TO EXCHANGE INFORMATION AND DISCUSS ASTHMA RELATED ISSUES; DISSEMINATING EDUCATIONAL LITERATURE IN THE FIELD OF SCIENTIFIC ADVANCES IN THE FIELD OF ASTHMA, ASTHMA MANAGEMENT PROGRAMS, AND OTHER HEALTH CARE RELATED ISSUES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 12-11-1998; IN COMMERCE 12-11-1998.

FOR: PROVIDING HEALTH CARE INFORMATION, NAMELY INFORMATION ABOUT SCIENTIFIC ADVANCES IN THE FIELD OF ASTHMA AND OTHER HEALTH CARE RELATED ISSUES; PROVIDING INFORMATION ABOUT ASTHMA MANAGEMENT; AND PROVIDING HEALTH CARE INFORMATION VIA WEB SITES AVAILABLE ON A GLOBAL COMMUNICATIONS NETWORK IN THE FIELD OF ASTHMA AND OTHER HEALTH CARE RELATED ISSUES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 11-26-2001; IN COMMERCE 11-26-2001.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ASTHMA" , APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A GROUP OF MEN AND WOMEN HOLDING A GLOBE WITH A SET OF LUNGS ON IT INSTEAD OF THE CONTINENTS.

SN 75-922,128, FILED 2-17-2000.

SUSAN HAYASH, EXAMINING ATTORNEY

# EXHIBIT  B

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-097-442

**Effective date of
registration:**

August 16, 2009

---

## Title

**Title of Work:** Global Initiative for Asthma, Global Strategy for Asthma Management and Prevention (Updated 2008)

**Previous or Alternative Title:** 2008 GINA Workshop Report

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** December 17, 2008     **Nation of 1st Publication:** United States

## Author

**Author:** Medical Communications Resources, Inc., dba G.O.L.D.

**Author Created:** text

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Medical Communications Resources, Inc., dba G.O.L.D.

8316 86th Avenue N.W., Gig Harbor, WA

## Limitation of copyright claim

**Material excluded from this claim:** photographs

**Previous registration and year:** TXu001329262   2006

**New material included in claim:** text

## Certification

**Name:** Catherine R. Keenan

**Date:** August 6, 2009

---

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REG

**TXu 1-329-262**

EFFECTIVE DATE OF REGISTRATION

11 / 20 / 06
Month   Day   Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

2006 Global Initiative for Asthma, Global Strategy for Asthma Management and Prevention

**PREVIOUS OR ALTERNATIVE TITLES ▼**

2006 G.I.N.A. Workshop Report

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

---

**2**

**a**   **NAME OF AUTHOR ▼**

Medical Communications Resources, Inc. d.b.a. G.O.L.D.

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ United States
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire Text

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**   **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**   **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**   **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ◀ Year in all cases.
2006

**b**   **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶      Day ▶      Year ▶      ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Medical Communications Resources, Inc., d.b.a. G.O.L.D.
8316 86th Avenue N.W.
Gig Harbor, WA 98332

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
NOV 2 0 2006
ONE DEPOSIT RECEIVED
NOV 2 0 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

See instructions before completing this space.

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.

EXAMINED BY _RM_          FORM TX

CHECKED BY

☐ CORRESPONDENCE          FOR
☐ Yes                     COPYRIGHT
                          OFFICE
                          USE
                          ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**DERIVATIVE WORK OR COMPILATION**          a **6**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼          b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.          a **7**
Name ▼          Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼          b
Catherine R. Keenan, Kirkpatrick & Lockhart Nicholson Graham LLP
599 Lexington Avenue
New York, New York 10022

Area code and daytime telephone number ▶ 212-536-4868          Fax number ▶ 212-536-3901

Email ▶ ckeenan@klng.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the          **8**
                    Check only one ▶ ☐ author
                                     ☐ other copyright claimant
                                     ☐ owner of exclusive right(s)
                                     ☑ authorized agent of  Medical Communications Resources, Inc.
of the work identified in this application and that the statements made          Name of author or other copyright claimant, or owner of exclusive right(s) ▲
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Catherine R. Keenan          Date ▶ 11/17/2006

Handwritten signature (X) ▼

X _Catherine R. Keenan_

Certificate          Name ▼          **9**
will be           Catherine R. Keenan, Kirkpatrick & Lockhart Nicholson Graham LLP
mailed in
window            Number/Street/Apt ▼
envelope          599 Lexington Avenue
to this
address:          City/State/ZIP ▼
                  New York, New York 10022

**EXHIBIT  C**

Eric Bateman, MD, GINA Chair
Paul O'Byrne, MD, GINA Executive Committee

Dear Colleagues,

Medical Communications Resources, Inc. (MCR), a Maryland Corporation, wishes to propose an agreement with the Global Initiative for Asthma (GINA), whose leadership has now applied to the US Internal Revenue Service for 501 C)3 status.

GINA freely enters into this agreement as an independent organization and according to its by-laws.

MCR, Inc. developed and holds the copyrights and trademarks for the names, logos, websites, eNewsletters, and other materials of GINA, including World Asthma Day. This agreement between MCR and GINA establishes certain rights for GINA to these copyrights and trademarks while documenting MCR's continuing rights.

Concerning the specific terms of agreement between GINA and MCR, Inc:

1)    MCR agrees that GINA, acting under its by-laws as a 501 C)3 corporation, has control of the content of its guidelines, has the right to use and control the use of its logo, the ability to publish its materials for non-profit educational and academic use and also to assign the rights to use and publish its materials to all its GINA Assembly members for non-profit educational and academic use. GINA has the right to control the content of communications relating to World Asthma Day and the GINA Web site.

2)   MCR retains the commercial rights to the GINA materials, copyrights, and trademarks in business transactions with for-profit companies such as pharmaceutical and communications companies. These uses of the GINA materials will faithfully maintain the medical content of the materials developed as outlined herein. Documents and materials of the Initiatives that are developed and approved by the Initiatives can be used by MCR for commercial dissemination purposes. Any new commercial use of Initiative materials that MCR wishes to pursue must be first presented to GINA and must be approved by the Executive Committee.

3). MCR will maintain a staff to serve the communications and publications activities of GINA(including publications, Web site, and eNewsletter management) at no cost to GINA. The profits from the use of the GINA materials for commercial uses as identified in item #2 will support this GINA infrastructure and the remainder would be shared equally by GINA and MCR. This agreement covers communications and publications activities that are currently performed by GINA, and yearly costs would not exceed the $23,634 that these activities cost in 2007. A complete accounting of all revenue and expenses and resulting profits from the use of the GINA materials as described in item #2 would be provided by MCR, and budgets for the GINA infrastructure agreed to by GINA and MCR.

4)    MCR will report twice a year both to the GINA liaison committee concerning the projects that it completes using GINA materials and will provide a fiscal accounting of the projects as well as a statement of the finances of US Health Network, Inc. is the company that will perform the work described in items #2 and #2.  US Health Network, like MCR, is owned by Dr. Grouse and obligations entered into by MCR are binding on US Health Network.  US Health Network costs will be managed  carefully and cost-effectively under this agreement.  The profit from GINA materials will be figured as the percent of the net profit of US Health Network reflecting the percent of the total revenue of US Health Network that resulted from the commercialization of GINA materials.  If a loss were to result from this commercialization effort, MCR would bear the full amount of the loss.  Profits would be split evenly between MCR and GINA for profits resulting from revenue obtain from GINA materials.  Profit sharing would occur yearly at the end of the company fiscal year.

5)   MCR agrees to undertake the GINA fundraising on the same arrangement that MCR currently has, namely for a 12.5% commission on total revenues secured for GINA.  Any documentation developed to support new funding initiatives will be reviewed and approved by GINA.  GINA will be responsible for managing all GINA funds and carrying on the GINA initiative.

6)   This agreement will commence when executed by GINA and MCR.

7)   5 years following the adoption of this agreement, during which time the agreement has been honored by GINA, MCR will transfer all its rights and ownership to the GINA initiative and its name, logo, and materials cited herein to the 501 C)3 corporation GINA Inc.

Sincerely,

Lawrence Grouse, MD, PhD
President, MCR, Inc. and US Health Network, Inc.

_____   27/03/2008
Agreement Signed for GINA    Date
        E. D. BATEMAN

_____
Agreement Signed for GINA    Date

**EXHIBIT  D**

Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

**United States Patent and Trademark Office**

Reg. No. 2,711,824

Registered Apr. 29, 2003

## SERVICE MARK
### PRINCIPAL REGISTER



MEDICAL COMMUNICATION RESOURCES, INC. (MARYLAND CORPORATION)
8316 86TH AVENUE N.W.
GIG HARBOR, WA 98332

FOR: EDUCATIONAL SERVICES, NAMELY CONDUCTING SEMINARS, CONFERENCES, WORKSHOPS AND CLASSES IN THE FIELD OF CHRONIC OBSTRUCTIVE LUNG DISEASE AND HEALTH CARE; EDUCATIONAL SERVICES, NAMELY CONDUCTING SEMINARS, CONFERENCES, WORKSHOPS AND CLASSES IN THE FIELD OF PREVENTION, TREATMENT, THERAPY AND MANAGEMENT OF CHRONIC OBSTRUCTIVE LUNG DISEASE AND DISTRIBUTING EDUCATIONAL MATERIALS IN CONNECTION THEREWITH; EDUCATIONAL SERVICES, NAMELY CONFERENCES AND SEMINARS PROMOTING INTERNATIONAL COLLABORATION ON OBSTRUCTIVE LUNG DISEASE RESEARCH AND DISTRIBUTING EDUCATIONAL MATERIALS, NAMELY, PRINTED MATERIALS, COMPACT DISCS, PAMPHLETS, FACT SHEETS AND BOOKLETS IN CONNECTION THEREWITH; PUBLICATION OF PATIENT INFORMATION AND PATIENT CARE INFORMATION BOOKLETS, PAMPHLETS, FACT SHEETS, AND COMPACT DISCS FOR PRIMARY HEALTH CARE PROFESSIONALS ON CHRONIC OBSTRUCTIVE LUNG DISEASE AND RELATED ISSUES; EDUCATIONAL SERVICES, NAMELY, SEMINARS, CONFERENCES, WORKSHOPS AND CLASSES FOR INSTRUCTING HEALTH CARE PROFESSIONALS ABOUT THE RELEVANCE OF THE DISEASE AND INFORMING THE PUBLIC ABOUT THE RISKS, TREATMENTS, MANAGEMENT AND PREVENTION OF CHRONIC OBSTRUCTIVE LUNG DISEASE , IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 4-1-2001; IN COMMERCE 4-1-2001.

OWNER OF U.S. REG. NO. 2,174,375.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHRONIC OBSTRUCTIVE LUNG DISEASE", APART FROM THE MARK AS SHOWN.

SN 76-143,942, FILED 10-6-2000.

DAVID ELTON, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 2,616,813

Registered Sep. 10, 2002

## SERVICE MARK
### PRINCIPAL REGISTER



MEDICAL COMMUNICATION RESOURCES, INC. (MARYLAND CORPORATION)
8316 86TH AVENUE N.W.
GIG HARBOR, WA 98332

FOR: COMPUTER SERVICES, NAMELY, PROVIDING INFORMATION VIA WEB SITES AVAILABLE ON A GLOBAL COMMUNICATIONS NETWORK IN THE FIELD OF CHRONIC OBSTRUCTIVE LUNG DISEASE AND HEALTH CARE; PROVIDING MEDICAL INFORMATION VIA WEB SITES ON GLOBAL COMPUTER NETWORKS, PROVIDING HEALTH CARE PROFESSIONALS AND PUBLIC HEALTH OFFICIALS WITH ON-LINE SCIENTIFIC REPORTS, MEDICAL JOURNALS AND TECHNICAL WRITINGS OF OTHERS ON MANAGEMENT, TREATMENT, THERAPY AND PREVENTION OF CHRONIC OBSTRUCTIVE LUNG DISEASE, INFORMATION REGARDING THE INTERNATIONAL COLLABORATION ON CHRONIC OBSTRUCTIVE LUNG DISEASE RESEARCH, INFORMATION FROM CHRONIC OBSTRUCTIVE LUNG DISEASE WORKSHOP REPORTS, INFORMATION INSTRUCTING HEALTH CARE PROFESSIONALS ABOUT THE RELEVANCE OF CHRONIC OBSTRUCTIVE LUNG DISEASE MANAGEMENT, AND INFORMATION TO THE PUBLIC ABOUT THE RISKS AND TREATMENTS FOR CHRONIC OBSTRUCTIVE LUNG DISEASE; COMPUTER SERVICES, NAMELY PROVIDING ON-LINE MEDICAL INFORMATION IN THE FIELD OF CHRONIC OBSTRUCTIVE LUNG DISEASE AND HEALTH CARE FOR PRIMARY HEALTH CARE PROFESSIONALS, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 8-31-2000; IN COMMERCE 8-31-2000.

OWNER OF U.S. REG. NO. 2,174,375.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHRONIC OBSTRUCTIVE LUNG DISEASE", APART FROM THE MARK AS SHOWN.

SER. NO. 76-143,941, FILED 10-6-2000.

DAVID ELTON, EXAMINING ATTORNEY

Int. Cls.: 41 and 44

Prior U.S. Cls.: 100, 101, and 107

**United States Patent and Trademark Office**

Reg. No. 2,882,518

Registered Sep. 7, 2004

## SERVICE MARK
### PRINCIPAL REGISTER



MEDICAL COMMUNICATIONS RESOURCES, INC. (MARYLAND CORPORATION)

8316 86TH AVENUE N.W.

GIG HARBOR, WA 98332

FOR: EDUCATIONAL SERVICES, NAMELY CONDUCTING SEMINARS, CONFERENCES, AND WORKSHOPS IN THE FIELD OF CHRONIC OB-STRUCTIVE PULMONARY DISEASE AND HEALTH CARE, PREVENTION, TREATMENT, THERAPY AND MANAGEMENT OF CHRONIC OBSTRUCTIVE PULMONARY DISEASE AND DIS-TRIBUTING EDUCATIONAL MATERIALS IN CON-NECTION THEREWITH; PUBLICATION OF PATIENT CARE INFORMATION AND PATIENT CARE INFORMATION BOOKLETS, PAMPHLETS, FACT SHEETS, AND COMPACT DISCS FOR PRI-MARY HEALTH CARE PROFESSIONALS ON CHRONIC OBSTRUCTIVE PULMONARY DISEASE AND RELATED HEALTH CARE ISSUES; IN-STRUCTING HEALTH CARE PROFESSIONALS ABOUT THE RELEVANCE OF THE DISEASE AND INFORMING THE PUBLIC ABOUT THE RISKS, TREATMENTS, MANAGEMENT AND PREVEN-TION OF CHRONIC OBSTRUCTIVE PULMONARY DISEASE, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 11-20-2002; IN COMMERCE 11-20-2002.

FOR: COMPUTER SERVICES, NAMELY, PRO-VIDING INFORMATION VIA WEB SITES IN THE FIELD OF CHRONIC OBSTRUCTIVE PULMONARY DISEASE AND HEALTH CARE; PROVIDING IN-FORMATION REGARDING THE INTERNATION-AL COLLABORATION ON CHRONIC OBSTRUCTIVE PULMONARY DISEASE; PROVID-ING LINKS TO WEB SITES OF OTHERS RELATING TO CHRONIC OBSTRUCTIVE PULMONARY DIS-EASE AND HEALTH CARE; PROVIDING HEALTH CARE PROFESSIONALS AND PUBLIC HEALTH OFFICIALS WITH ON-LINE MEDICAL INFORMA-TION RELATING TO CHRONIC OBSTRUCTIVE PULMONARY DISEASE AND HEALTH CARE, IN CLASS 44 (U.S. CLS. 100 AND 101).

FIRST USE 11-20-2002; IN COMMERCE 11-20-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COPD", APART FROM THE MARK AS SHOWN.

THE LINING SHOWN IN THE DRAWING IS A FEATURE OF THE MARK AND IS NOT INTENDED TO INDICATE COLOR.

SN 76-449,105, FILED 9-13-2002.

TANYA AMOS, EXAMINING ATTORNEY

**EXHIBIT  E**

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*MaryBeth Peters*

Register of Copyrights, United States of America



**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 6-349-281



EFFECTIVE DATE OF REGISTRATION

6 Month  28 Day  06 Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
Updated 2003 Global Initiative for Chronic Obstructive Lung Disease, Global Strategy for the Diagnosis, Management, and Preparation of Chronic Obstructive Pulmonary Disease

**PREVIOUS OR ALTERNATIVE TITLES ▼**
Updated 2003 G.O.L.D. Workshop Report

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

**2**

**a** **NAME OF AUTHOR ▼**
Medical Communications Resources, Inc. d.b.a. G.O.L.D.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ United States
     { Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire text

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     { Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     { Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2003 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ July  Day ▶ 14  Year ▶ 2003
U.S.A. ◀ Nation

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Medical Communications Resources, Inc.
8316 86th Avenue N.W.
Gig Harbor, WA 98332

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUN 2 8 2006
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUN 2 8 2006
FUNDS RECEIVED

DO NOT WRITE HERE

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.  • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of _____ pages

| EXAMINED BY | | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☑ Yes   ☐ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☑ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶ **TX 6-340-857**   Year of Registration ▶ **2006**

**5**

---

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

2001 G.O.L.D. Workshop Report, published in May 2001

**a**

**6**

*See instructions before completing this space.*

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Updated research, revised text, and addition of material, including without limitation, identification of new issues and addition of specific recommendations

**b**

---

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                    Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Catherine R. Keenan, Kirkpatrick & Lockhart Nicholson Graham LLP

599 Lexington Avenue

New York, New York 10022

**b**

Area code and daytime telephone number ▶ 212-536-4868                    Fax number ▶ 212-536-3901

Email ▶   ckeenan@kl.com

---

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☑ authorized agent of   **Medical Communications Resources, Inc.**

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Catherine R. Keenan                                    Date ▶ 6/26/2006

Handwritten signature (X) ▼

X *Catherine R Keenan*

---

| | | **9** |
|---|---|---|
| **Certificate will be mailed in window envelope to this address:** | Name ▼  Catherine R. Keenan | • Complete all necessary spaces • Sign your application in space 8 |
| | Number/Street/Apt ▼  Kirkpatrick & Lockhart Nicholson Graham, 599 Lexington Avenue | 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | City/State/ZIP ▼  New York, New York 10022 | Library of Congress Copyright Office - TX 101 Independence Avenue, S.E. Washington, D.C. 20559-6222 |

*17 U.S.C. § 506(e). Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. July 2003—xxx   Web Rev. July 2003   ⊕ Printed on recycled paper                    U.S. Government Printing Office: 2003-461-113/20,021

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGI:  **TXu 1 – 328 – 294**

EFFECTIVE DATE OF REGISTRATION

11    20    06
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
2006 Global Initiative for Chronic Obstructive Lung Disease, Global Strategy for the Diagnosis, Management, and Prevention of Chronic Obstructive Pulmonary Disease

**PREVIOUS OR ALTERNATIVE TITLES ▼**
2006 G.O.L.D. Workshop Report

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

---

**2**

**a** **NAME OF AUTHOR ▼**
Medical Communications Resources, Inc. d.b.a. G.O.L.D.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR ▸ Citizen of ▸ United States
Domiciled in▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questions is "Yes," see detailed instructions.
Anonymous?   ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire Text

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR ▸ Citizen of ▸
Domiciled in▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questio is "Yes," see detailed instructions.
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR ▸ Citizen of ▸
Domiciled in▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
If the answer to either of these questions is "Yes," see detailed instructions.
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2006 ◄Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month▸ _____ Day ▸ _____ Year▸ _____   ◄ Nation

---

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Medical Communications Resources, Inc.
8316 86th Avenue N.W.
Gig Harbor, WA 98332

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
NOV 2 0 2006
ONE DEPOSIT RECEIVED
NOV 2 0 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

**MORE ON BACK ▸** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ... .. pages

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**
## TX 6-974-045

**Effective date of registration:**

February 8, 2008

## Title

**Title of Work:** Global Initiative for Chronic Obstructive Lung Disease, Global Strategy for the Diagnosis, Management and Prevention of Chronic Obstructive Pulmonary Disease (Updated 2007)

**Previous or Alternative Title:** 2007 G.O.L.D. Workshop Report

## Completion/ Publication

**Year of Completion:** 2007

**Date of 1st Publication:** December 27, 2007

## Author

■ **Author:** Medical Communications Resources, Inc. d.b.a. G.O.L.D.

**Author Created:** Entire Text

**Work made for hire:** Yes

**Citizen of:** United States

**Anonymous:** No                    **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Medical Communications Resources, Inc.

8316 86th Avenue, N.W., Gig Harbor, WA, 98332

## Limitation of copyright claim

**Material excluded from this claim:** 2006 G.O.L.D. Workshop Report, Copyright Registration No. TXu 1-328-294

**Previously registered:** Yes

**Basis of current registration:** This is a changed version of the work.

**New material included in claim:** Additional new material and updated research

## Certification

**Registration #:**   TX0006974045

**Service Request #:**   1-48505806

K&L Gates
Catherine R. Keenan
599 Lexington Avenue
New York, NY 10022

**EXHIBIT  F**

Roberto Rodriguez Roisin, MD, GOLD Chair
Klaus Rabe, MD, GOLD Co-Chair                                    2-20-08

Dear Colleagues,

Medical Communications Resources, Inc. (MCR), a Maryland Corporation, wishes to propose an agreement with the Global Initiative for Chronic Obstructive Lung Diseases (GOLD), a 501 C) 3 Maryland Corporation.

GOLD freely enters into this agreement as an independent organization and according to its by-laws.

MCR, Inc. developed and holds the copyrights and trademarks for the names, logos, websites, eNewsletters, and other materials of GOLD , including World COPD Day. This agreement between MCR and GOLD establishes certain rights for GOLD to these copyrights and trademarks while documenting MCR's continuing rights.

Concerning the specific terms of agreement between GOLD and MCR:

1)     MCR agrees that GOLD acting under its by-laws as a 501 C)3 corporation, has control of the content of its guidelines, has the right to use and control the use of its logo, the ability to publish its materials for non-profit educational and academic use and also to assign the rights to use and publish its materials to all GOLD National Leader members for non-profit educational and academic use.  GOLD has the right to control the content of communications relating to World COPD Day and the GOLD Web site.

2)    MCR retains the commercial rights to the GOLD materials, copyrights, and trademarks in business transactions with for-profit companies such as pharmaceutical and communications companies.  These uses of the GOLD materials will faithfully maintain the medical content of the materials developed as outlined herein.  Documents and materials of the Initiatives that are developed and approved by GOLD can be used by MCR for commercial dissemination purposes.  Any new commercial use of Initiative materials that MCR wishes to pursue must be first presented to the GOLD and must be approved by the Executive Committee.

3). MCR will maintain a staff to serve the communications and publications activities of GOLD (including publications, Web site, and eNewsletter management) at no cost to GOLD.  The profits from the use of the GOLD materials for commercial uses as identified in item #2 will support this GOLD infrastructure and the remainder would be shared equally by GOLD and MCR, Inc.  This agreement covers communications and publications activities that are currently performed by GOLD, and yearly costs would not exceed the $23,525 that these activities cost in 2007.  A complete accounting of all revenue and expenses and resulting profits from the use of the GOLD materials as described in item #2 would be provided by MCR, and budgets for the GOLD infrastructure agreed to by GOLD and MCR.

4)   MCR will report twice a year to the GOLD liaison committee concerning the projects that it completes using GOLD materials and will provide a fiscal accounting of the projects as well as a statement of the finances of US Health Network, Inc., the company that will perform the work described in items #2 and #3.  US Health Network, like MCR, is owned by Dr. Grouse and obligations entered into by MCR are binding on US Health Network.  US Health Network costs will be managed carefully and cost-effectively under this agreement.  The profit from GOLD materials will be figured as the percent of the net profit of US Health Network reflecting the percent of the total revenue of US Health Network that resulted from the commercialization of GOLD materials.  If a loss were to result from this commercialization effort, MCR would bear the full amount of the loss.  Profits would be split evenly between MCR and GOLD, for profits resulting from revenue obtained from GOLD materials.  Profit sharing would occur yearly at the end of the company fiscal year.

5)   MCR agrees to undertake the GOLD fundraising on the same arrangement that MCR currently has, namely for a 12.5% commission on total revenues secured for GOLD.  Any documentation developed to support new funding initiatives will be reviewed and approved by GOLD.  GOLD will be responsible for managing all GOLD funds and carrying on the GOLD initiatives.

6)   This agreement will commence when executed by GOLD and MCR.

7)   5 years following the adoption of this agreement, during which time the agreement has been honored by GOLD, MCR will transfer all its rights and ownership to the GOLD initiative and its name, logo, and materials cited herein to the 501 C)3 corporation GOLD Inc.

Sincerely,

Lawrence Grouse, MD, PhD
President, MCR, Inc. and US Health Network, Inc.

_____
Agreement Signed for GOLD        Date

_____
Agreement Signed for GOLD        Date

**EXHIBIT  G**

**CATHERINE R. KEENAN**
ATTORNEY AT LAW
65 HIGH RIDGE ROAD, # 186
STAMFORD, CONNECTICUT 06905

(203) 355-9845
catkeenan@optonline.net

July 29, 2010

**By Email: Eric.Bateman@uct.ac.za**
**By Email: obyrnep@mcmaster.ca**
**By Federal Express**

Eric D. Bateman, MD
University Cape Town Lung Institute
George Street
Mowbray, 7700
Cape Town, South Africa

Paul O'Byrne, MD
McMaster University
Health Sciences Center, Rm 3W10
1200 Main St. W, Hamilton
Ontario L8N 3Z5 Canada

Re:     **The GINA Initiative**

Dear Drs. Bateman and O'Byrne:

    I am counsel to Medical Communications Resources, Inc. ("MCR"). This is to advise you that MCR is hereby terminating the March 27, 2008 Agreement ("Agreement") with GINA, Inc., effective immediately.

    GINA, Inc. has violated Paragraph 2 of the Agreement which provides MCR with the sole right to commercialize GINA-related materials, by granting the right to use GINA materials to third parties for commercial purposes. In addition, GINA, Inc. has further breached the Agreement and the implied covenant of good faith and fair dealing inherent in the Agreement by giving away MCR's right to recruit sponsorship funds from industry, by preventing GINA leaders from working with MCR to commercialize GINA materials, by refusing to provide GINA Meeting Minutes and Agendas to MCR for distribution to sponsors, by refusing to allow MCR to attend essential meetings with GINA leaders that are necessary to commercialize GINA

materials, by refusing to allow MCR to participate in Initiatives such as the ASTHMA
CHALLENGE, by refusing to communicate with MCR representatives responsible for
commercializing GINA materials, among other things. These material breaches of the
Agreement have resulted in substantial financial losses to MCR. GINA, Inc. has also infringed
MCR's copyrights and trademarks, causing extensive damage to MCR's intellectual property,
lost profits and an anticipated devaluation of MCR's intellectual property and goodwill.

In addition, MCR has recently learned that GINA, Inc. has grossly mismanaged the sponsor
funds raised by MCR for use in connection with GINA dissemination and guideline activities.
For example, it has come to MCR's attention that GINA, Inc. has spent less than half the funds
allocated by the sponsors for dissemination and guideline on those activities. Your company's
mismanagement of funds will have serious ramifications for both GINA, Inc. and MCR. By
failing to use the pledges for their stated purpose, GINA, Inc. has opened the doors for potential
legal action by the sponsors for return of their pledges. Moreover, once sponsors learn of this
mismanagement, not only will they likely cease to participate in future activities of the GINA
Initiative, but MCR's reputation and its relationship with the sponsors will be irreparably
harmed. In short, GINA, Inc.'s actions have jeopardized the ongoing operation of the GINA
Initiative and MCR cannot sit back and watch.

Finally, MCR has also recently learned that GINA, Inc. is slated by the IRS to lose its not-
for-profit status as a result of a refusal to take action to comply with IRS regulations for
501(c)(3) corporations. Moreover, GINA, Inc.'s corporate charter is listed as "not in good
standing" because of non-payment of yearly fees for the past three years. GINA, Inc.'s status as
a 501(c)(3) corporation and its status as a corporation in good standing are important aspects of
MCR's fundraising activities. Its failure to keep its not-for-profit status will almost certainly
result in a diminution of sponsor pledges.

Accordingly, MCR believes that it has no other choice but to terminate the Agreement.

By terminating the Agreement, all rights granted thereunder to GINA, Inc. are hereby
withdrawn and GINA, Inc. must immediately cease any use of MCR's intellectual property.
MCR's intellectual property includes, without limitation:

(*a*) GINA Report: "Global Strategy for Asthma Management and Prevention";

(*b*) GINA Pocket Guide for Management and Prevention of Asthma for Physicians and
Nurses;

(*c*) GINA Report: "Global Strategy for the Diagnosis and Management of Asthma in
Children 5 Years and Younger";

(*d*) Pocket Guide for Asthma Management and Prevention in Children 5 Years and
Younger;

(*e*) "At-a-Glance Asthma Management Reference"; and

(*f*) its trademarks and service marks, including "WORLD ASTHMA DAY" and Design,
"WORLD COPD DAY" and Design, "GLOBAL INITIATIVE FOR ASTHMA" and Design,

"GLOBAL INITIATIVE FOR ASTHMA", "ALLERGIC RHINITIS AND ITS IMPACT ON ASTHMA" and Design, and "ASTHMA CONTROL CHALLENGE" and Design (collectively "MCR's Property").

This means that GINA, Inc. must:

1.  immediately stop and refrain from any commercial use of MCR's Property, including without limitation, the sale of MCR's Property or its content, the use of MCR's Property or its content for advertising, marketing, or promotional purposes, the publication of MCR's Property or its content, and the posting of MCR's Property or its content;

2.  immediately stop and refrain from reproducing MCR's Property;

3.  immediately stop and refrain from any further efforts to update, edit, re-write, or otherwise create derivative works based on the content of MCR's Property;

4.  immediately stop and refrain from further distribution of copies of MCR's Property, whether in print, on CD Rom, in electronic format, or otherwise;

5.  refrain from publishing any guidelines or any other materials which contain the unauthorized use of MCR's Property;

6.  immediately stop and refrain from authorizing others to use or reproduce MCR's Property or its content;

7.  immediately stop and refrain from using MCR's trademarks and service marks, including the marks "WORLD ASTHMA DAY" and Design, "WORLD COPD DAY" and Design, "GLOBAL INITIATIVE FOR ASTHMA" and Design, "GLOBAL INITIATIVE FOR ASTHMA", "ALLERGIC RHINITIS AND ITS IMPACT ON ASTHMA" and Design, and "ASTHMA CONTROL CHALLENGE" and Design, or any confusingly similar mark; and

8.  immediately stop and refrain from participating in the World Asthma Day, World COPD Day and GINA Asthma Challenge events.

Failure to immediately cease from the aforementioned activities will constitute willful copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 et seq., trademark infringement in violation of the Lanham Act, and/or unfair competition in violation of § 15 U.S.C. 1125(a).  MCR's Property is an extremely valuable asset and MCR is fully prepared to take whatever action may be necessary to protect it.

MCR further demands an accounting of GINA, Inc.'s financial records and bank accounts, including a detailed report of revenues and expenditures from March 27, 2008 to present (including without limitation salaries paid out and deposits given to third parties for future goods/services), and the source of the funds currently in GINA, Inc.'s bank accounts.  In addition, MCR demands that GINA, Inc. return to it any unused sponsor funds currently in any

GINA, Inc. bank account. As of this date, there should be no further disbursements of sponsor pledges held by GINA, Inc. without the written consent of MCR, Inc.

Please confirm in writing by **August 5, 2010** that GINA, Inc., its Board of Directors, Executive Committee Members, international collaborators, and other agents and representatives of GINA, Inc. will promptly comply.

Nothing herein shall constitute a waiver of any right in law or equity of MCR. MCR expressly reserves all of its rights and remedies in connection with this matter.

Very truly yours,

Catherine R. Keenan

cc:  Dr. Lawrence Grouse (by email only)
     Mr. Steve Prete (by email only)
     Dr. Claude Lenfant (by email only)
     Dr. Suzanne Hurd (by email only)
     Roger Kindley, Esq. (by email only)

4

**CATHERINE R. KEENAN**
ATTORNEY AT LAW
65 HIGH RIDGE ROAD, # 186
STAMFORD, CONNECTICUT 06905

(203) 355-9845
catkeenan@optonline.net

July 29, 2010

**By Email: rororo@clinic.ub.es**
**By Email: anzueto@uthscsa.edu**
**By Federal Express**

Roberto Rodriguez Roisin, MD
Professor of Medicine/Academic Affairs
Director/Senior Consultant Physician
Hospital Clínic, Universitat de Barcelona
Villarroel, 170. CP 08036-Barcelona, Spain

Antonio Anzueto, MD
Professor Medicine, Pulmonary/Critical Care
University of Texas Health Science Center
111E 7400 Merton Minter Blvd
San Antonio Texas 78229

Re:     **The GOLD Initiative**

Dear Drs. Roisin and Anzueto:

I am counsel to Medical Communications Resources, Inc. ("MCR").  This is to advise you that MCR is hereby terminating the February 20, 2008 Agreement ("Agreement") with GOLD, Inc., effective immediately.

GOLD, Inc. has violated Paragraph 2 of the Agreement which provides MCR with the sole right to commercialize GOLD-related materials, by granting the right to use GOLD materials to third parties for commercial purposes.  In addition, GOLD, Inc. has further breached the Agreement and the implied covenant of good faith and fair dealing inherent in the Agreement by giving away MCR's right to recruit sponsorship funds from industry, by preventing GOLD leaders from working with MCR to commercialize GOLD materials, by refusing to provide GOLD Meeting Minutes and Agendas to MCR for distribution to sponsors, by refusing to allow MCR to attend essential meetings with GOLD leaders that are necessary to commercialize

GOLD materials, by refusing to communicate with MCR representatives responsible for commercializing GOLD materials, among other things. These material breaches of the Agreement have resulted in substantial financial losses to MCR. GOLD, Inc. has also infringed MCR's copyrights and trademarks, causing extensive damage to MCR's intellectual property, lost profits and an anticipated devaluation of MCR's intellectual property and goodwill.

In addition, MCR has recently learned that GOLD, Inc. has grossly mismanaged the sponsor funds raised by MCR for use in connection with GOLD dissemination and guideline activities. For example, it has come to MCR's attention that GOLD, Inc. has spent less than half the funds allocated by the sponsors for dissemination and guideline on those activities. Your company's mismanagement of funds will have serious ramifications for both GOLD, Inc. and MCR. By failing to use the pledges for their stated purpose, GOLD, Inc. has opened the doors for potential legal action by the sponsors for return of their pledges. Moreover, once sponsors learn of this mismanagement, not only will they likely cease to participate in future activities of the GOLD Initiative, but MCR's reputation and its relationship with the sponsors will be irreparably harmed. In short, GOLD, Inc.'s actions have jeopardized the ongoing operation of the GOLD Initiative and MCR cannot sit back and watch.

Finally, MCR has also recently learned that GOLD, Inc. is slated by the IRS to lose its not-for-profit status as a result of a refusal to take action to comply with IRS regulations for 501(c)(3) corporations. Moreover, GOLD, Inc.'s corporate charter is listed as "not in good standing" because of non-payment of yearly fees for the past three years. GOLD, Inc.'s status as a 501(c)(3) corporation and its status as a corporation in good standing are important aspects of MCR's fundraising activities. Its failure to keep its not-for-profit status will almost certainly result in a diminution of sponsor pledges.

Accordingly, MCR believes that it has no other choice but to terminate the Agreement.

By terminating the Agreement, all rights granted thereunder to GOLD, Inc. are hereby withdrawn and GOLD, Inc. must immediately cease any use of MCR's intellectual property. MCR's intellectual property includes, without limitation:

(a) GOLD Report: "Global Strategy for Diagnosis, Management, and Prevention of COPD";

(b) GOLD Pocket Guide to COPD Diagnosis, Management, and Prevention;

(c) GOLD COPD Diagnosis and Management At-A-Glance Desk Reference;

(d) GOLD At-A-Glance Pocket Reference for COPD Diagnosis, Management, and Prevention;

(e) GOLD Executive Summary: Global Strategy for Diagnosis, Management, and Prevention of COPD;

(f) GOLD Spirometry Guide;

(g) GOLD Spirometry Quick Guide; and

(h) its trademarks and service marks, including "WORLD ASTHMA DAY" and Design, "WORLD COPD DAY" and Design, "GLOBAL INITIATIVE FOR ASTHMA" and Design, "GLOBAL INITIATIVE FOR ASTHMA", "ALLERGIC RHINITIS AND ITS IMPACT ON ASTHMA" and Design, and "ASTHMA CONTROL CHALLENGE" and Design (collectively "MCR's Property").

This means that GOLD, Inc. must:

1. immediately stop and refrain from any commercial use of MCR's Property, including without limitation, the sale of MCR's Property or its content, the use of MCR's Property or its content for advertising, marketing, or promotional purposes, the publication of MCR's Property or its content, and the posting of MCR's Property or its content;

2. immediately stop and refrain from reproducing MCR's Property;

3. immediately stop and refrain from any further efforts to update, edit, re-write, or otherwise create derivative works based on the content of MCR's Property;

4. immediately stop and refrain from further distribution of copies of MCR's Property, whether in print, on CD Rom, in electronic format, or otherwise;

5. refrain from publishing any guidelines or any other materials which contain the unauthorized use of MCR's Property;

6. immediately stop and refrain from authorizing others to use or reproduce MCR's Property or its content;

7. immediately stop and refrain from using MCR's trademarks and service marks, including the marks "WORLD ASTHMA DAY" and Design, "WORLD COPD DAY" and Design, "GLOBAL INITIATIVE FOR ASTHMA" and Design, "GLOBAL INITIATIVE FOR ASTHMA", "ALLERGIC RHINITIS AND ITS IMPACT ON ASTHMA" and Design, and "ASTHMA CONTROL CHALLENGE" and Design, or any confusingly similar mark; and

8. immediately stop and refrain from participating in the World COPD Day and related events.

Failure to immediately cease from the aforementioned activities will constitute willful copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 et seq., trademark infringement in violation of the Lanham Act, and/or unfair competition in violation of § 15 U.S.C. 1125(a). MCR's Property is an extremely valuable asset and MCR is fully prepared to take whatever action may be necessary to protect it.

MCR further demands an accounting of GOLD, Inc.'s financial records and bank accounts, including a detailed report of revenues and expenditures from February 20, 2008 to present (including without limitation salaries paid out and deposits given to third parties for future goods/services), and the source of the funds currently in GOLD, Inc.'s bank accounts. In

addition, MCR demands that GOLD, Inc. return to it any unused sponsor funds currently in any GOLD, Inc. bank account.  As of this date, there should be no further disbursements of sponsor pledges held by GINA, Inc. without the written consent of MCR, Inc.

Please confirm in writing by **August 5, 2010** that GOLD, Inc., its Board of Directors, Executive Committee Members, international collaborators, and other agents and representatives of GOLD, Inc. will promptly comply.

Nothing herein shall constitute a waiver of any right in law or equity of MCR.  MCR expressly reserves all of its rights and remedies in connection with this matter.

Very truly yours,

Catherine R. Keenan

cc:  Dr. Lawrence Grouse (by email only)
    Mr. Steve Prete (by email only)
    Dr. Claude Lenfant (by email only)
    Dr. Suzanne Hurd (by email only)
    Roger Kindley, Esq. (by email only)